# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1725
_____

United States of America

*Plaintiff - Appellee*

v.

Korey K. Moore, Originally named, Korey Keshaun Moore

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 22, 2017
Filed: November 3, 2017
[Unpublished]
_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.
_____

PER CURIAM.

A jury convicted Korey K. Moore of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). After determining that Moore previously had been convicted of three violent felonies under 18 U.S.C. § 924(e)(2)(B)(i), the district

court[1] applied the sentencing enhancement under 18 U.S.C. § 924(e)(1) and sentenced Moore to 180 months' imprisonment. On appeal, Moore argues that the evidence was insufficient to support his conviction and that the district court erroneously designated him as an armed career criminal. We affirm.

## I. Background

Sandra Walker called 911 on September 14, 2015, reporting that her son, Korey Moore, was angry with her and that he was "outside shooting." When asked where Moore was located, Walker responded, "I don't know. I'm in my room. . . . I don't know. Did he shoot up my car? I don't know. He was just shooting." As Walker waited for the police, she expressed her concern that her son would enter her room, telling the dispatcher, "I'm trying to put something up under the door so he can't get in my room. Oh, Jesus. . . . [T]hat ain't gonna stop him from kicking it in 'cause he'll kick this door in. . . . They sure is taking a long time."

Officer Mark Wright arrived on scene approximately five minutes after Walker called 911. He noticed that Walker was upset. Walker said that she had argued with Moore and that he walked out of the house after breaking a coffee table. Walker reported that Moore exited through the door located near the carport where Walker had parked her car. According to Walker, she heard gunshots immediately after Moore left. Walker told Officer Wright that she believed that Moore was the shooter.

After Officer Wright exited Walker's residence, he saw seventeen bullet holes in the driver's side of Walker's car and seventeen shell casings on the ground. Officer Wright then noticed Moore at a nearby neighbor's carport and arrested him.

---

[1] The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

During trial, the government entered Walker's 911 call into evidence, and Officer Wright testified about the conversation he had had with Walker the day of the shooting. A new narrative developed, however, when Walker and her boyfriend, Carl Barnes, testified about the shooting. According to Walker and Barnes, Moore discovered that Barnes had drug debts and told Walker. To enact revenge on Moore, Barnes instructed Walker to call 911 and falsely claim that Moore had shot her car. Barnes testified that drug dealers could have shot the car because of the unpaid debt. Despite this narrative, the jury convicted Moore.

At sentencing, Moore objected to the presentence report's conclusion that he was an armed career criminal. The district court overruled Moore's objection and determined Moore had at least three prior violent felony convictions based on his convictions for first-degree domestic battery, third-degree domestic battery, and terroristic threatening. The district court then imposed the mandatory minimum sentence of 180 months.

## II. Discussion

### A. Sufficiency of the Evidence

We review *de novo* whether the evidence is sufficient to sustain a conviction. United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010). We view the evidence in the light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences. Id. "The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict." Id. We will reverse a jury's verdict only if no reasonable jury could find all of the elements beyond a reasonable doubt. Id.

To convict Moore of being a felon in possession of ammunition, the government needed to prove beyond a reasonable doubt the following elements:

"(1) [Moore] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) [Moore] knowingly possessed ammunition, and (3) the ammunition had traveled in or affected interstate commerce." United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010) (citing United States v. Walker, 393 F.3d 842, 846 (8th Cir. 2005)). Moore argues that the government failed to prove that he knowingly possessed the ammunition. Moore emphasizes the lack of physical evidence and eyewitness testimony linking him to the ammunition. Moore also relies on Walker's testimony that her prior statements were untrue.

We conclude that when viewed in the light most favorable to the verdict, the evidence was sufficient to support Moore's conviction. It was for the jury to determine which version of Walker's description of the relevant events represented the truth.

### B. Armed Career Criminal Act

A person convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) faces a mandatory minimum sentence of 180 months if he has three prior violent felony convictions resulting from conduct that occurred on separate occasions. 18 U.S.C. § 924(e)(1). The Armed Career Criminal Act defines a violent felony in part as "any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The district court determined that Moore had four prior convictions for domestic battery in the third-degree under Arkansas Code § 5-26-305. Moore argues that an Arkansas third-degree domestic battery conviction does not constitute a crime of violence under the Armed Career Criminal Act.

Moore's prior convictions for third-degree domestic battery fell under subsection (a)(1) of Arkansas Code § 5-26-305, which provides, in relevant part, that

"[a] person commits domestic battering in the third degree if: (1) With the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member."[2] We have previously ruled that this Arkansas statute is divisible. United States v. Eason, 829 F.3d 633, 642 (8th Cir. 2016). Accordingly, we must determine whether subsection (a)(1) "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

We have held that if a crime's elements require the physical injury of another, the crime's elements necessarily include the use of physical force. United States v. Winston, 845 F.3d 876, 878 (8th Cir. 2017); see United States v. Rice, 813 F.3d 704, 706 (8th Cir. 2016). We have reasoned that violent force is a prerequisite for physical injury, even if the force is indirect, Winston 845 F.3d at 878; Rice, 813 F.3d at 706, and so Moore's prior convictions for domestic battery in the third-degree qualify as crimes of violence under the Armed Career Criminal Act. Because Moore has pleaded guilty to domestic battery in the third-degree on at least four separate occasions, we need not determine whether any of Moore's other convictions qualify as a crime of violence under 18 U.S.C. § 924(e)(2)(B)(i).

The judgment is affirmed.

_____

---

[2] Moore appears to concede that subsection (a)(1) of the statute applies to his convictions. Appellant's Br. 21 ("Although the district court did not specifically identify which portion of Arkansas's domestic battering in the third degree statute Mr. Moore was convicted of violating, it appears from the record that Mr. Moore was convicted under subsection (a)(1) of Ark. Code Ann. § 5-26-305.").