# United States Court of Appeals
### For the Eighth Circuit

———————————————————

No. 25-1483

———————————————————

United States of America

*Plaintiff - Appellee*

v.

Phillip Lamount Davis

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: April 13, 2026
Filed: June 23, 2026
[Unpublished]

——————————

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

——————————

PER CURIAM.

Phillip Lamount Davis pled guilty to one count of conspiracy to distribute a controlled substance, one count of distribution of a controlled substance while on pretrial release, and one count of possession with intent to distribute a controlled substance while on pretrial release. At his sentencing hearing, the district court applied a two-level enhancement for Davis's leadership role in the conspiracy and

sentenced him to 150 months' imprisonment and 5 years' supervised release. Davis appeals, arguing that the district court erred in applying this enhancement. Having jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

Davis's conviction arises from drug trafficking activities he undertook while on federal pretrial release in a different drug trafficking case. In June 2024, Minnesota Lake Superior Violent Offender Task Force law enforcement officers (LEOs) learned that Davis was selling methamphetamine and fentanyl from his apartment in Hibbing, Minnesota, notwithstanding the fact that he was currently under federal pretrial release supervision. In late June 2024, LEOs facilitated a controlled buy in which a confidential informant purchased 29.2 grams of methamphetamine from Davis.

Less than two weeks later, LEOs learned that Davis had directed Misty Kay Lind and another female to go to Minneapolis-St. Paul (MSP) to pick up drugs. LEOs identified Lind's vehicle on the highway heading back from MSP and stopped it. Lind was in the driver's seat, and an unidentified female was in the passenger's seat. LEOs searched Lind's vehicle and found 158.2 grams of methamphetamine and fentanyl. Lind told LEOs that Davis had given her $1,500 with instructions to pick up methamphetamine for him from someone in MSP. She also told them that she had made two prior trips to purchase drugs for Davis.

That same day, LEOs arrested Davis as he left his apartment. While detained, Davis dropped several items, including a pocketknife and paper towel—both of which contained cocaine residue—and a digital scale. LEOs subsequently executed a search warrant at Davis's apartment. They found 51.6 grams of fentanyl, 32 grams of methamphetamine, an airsoft pistol with a black painted tip, and $1,295 in cash. When LEOs later met with Davis while he was in custody at the city jail, Davis repeatedly denied that he sold drugs and told them that he did nothing wrong.

Subsequently, a federal grand jury charged Davis in a three-count indictment with conspiracy to distribute fentanyl; distribution of methamphetamine while on

-2-

pretrial release; and possession with intent to distribute fentanyl and methamphetamine while on pretrial release.  Davis pled guilty to all three counts, and the district court ordered the United States' Probation Office to prepare a presentence investigation report (PSR).

The PSR grouped Davis's three convictions pursuant to United States Sentencing Guideline (USSG) § 2D1.1 and calculated his base offense level as 26.  The PSR recommended a two-level enhancement for Davis's role as an organizer, leader, manager, or supervisor of the crime pursuant to USSG § 3B1.1(c), a three-level obstruction of justice enhancement for committing these offenses while on supervised release, and a three-level reduction for acceptance of responsibility.  Applying these enhancements and reduction, Davis's total offense level became 28, and, with a criminal history category of VI, his Guideline range was 140 to 175 months' imprisonment.  The district court applied the PSR's recommended enhancements and reduction and sentenced Davis to 150 months' imprisonment—120 months to be served concurrently with the undischarged term of imprisonment imposed in his previous federal case and 30 months to be served consecutively to that.

Davis argues that the district court erred in applying the leadership enhancement under USSG § 3B1.1(c), contending that the Government failed to prove that the enhancement applied to Davis's conduct by a preponderance of the evidence.  We review the district court's factual findings as to whether a leadership enhancement is proper for clear error and its legal conclusions de novo.  United States v. Keleta, 949 F.3d 1082, 1093 (8th Cir. 2020).  "It is the government's burden to prove a leadership enhancement applies by a preponderance of the evidence."  Id. (citation omitted).

USSG § 3B1.1(c) provides that if a defendant was an organizer, leader, manager, or supervisor in any criminal activity, his offense level should be increased by two levels.  "We 'broadly construe' the definition of an organizer, leader, manager, or supervisor."  United States v. Alexander, 714 F.3d 1085, 1091 (8th Cir.

2013) (citation omitted). At the time of Davis's sentencing, the commentary to USSG § 3B1.1 provided that even if a defendant did not manage or supervise other participants, he could receive an upward departure if he "exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1, cmt. n.2 (2024). In November 2025, the Commission removed this language from the commentary. See Amend. 836 to USSG § 3B1.1.

The PSR explained that it applied the leadership enhancement to Davis because he "operated in a higher position in the conspiracy, exerted decision-making authority, and utilized Lind and others to traffic drugs from MSP to his apartment." Davis objected to the enhancement's application and its factual predicates in his written objections to the PSR. He argued that "[t]his was a very low-level, two-person drug distribution agreement with his romantic partner" and that he "did not 'use or control' any other person, and the 'scope' of the conspiracy was limited to small, local sales of common street drugs." He repeated these objections at sentencing. The Government did not call a witness to prove the disputed facts, but it nonetheless urged the district court to apply the enhancement based on the undisputed record. The district court agreed with the Government, concluding that the undisputed facts "establish that Mr. Davis exercised management responsibility over the property, asserts, or activities of the charged conspiracy," and it accordingly applied the leadership enhancement.

Davis argues that the district court erroneously interpreted the commentary to USSG § 3B1.1(c) in its application of this enhancement. We agree. Indeed, the application notes to USSG § 3B1.1(c) instruct that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more other participants*." USSG § 3B1.1 cmt. n.2 (emphasis added); see also United States v. Hammerschmidt, 881 F.3d 633, 637 (8th Cir. 2018) (explaining that this application note resolved a circuit split and "clarified that a § 3B1.1 adjustment was appropriate only if the defendant had organized, led, managed, or supervised another participant"). Although at the time of Davis's sentencing, the application notes provided that a defendant could receive an *upward*

-4-

*departure* if he "exercised management responsibility over property, assets, or activities of a criminal organization," USSG § 3B1.1, cmt. n.2 (2024) (emphasis added), sentencing enhancements are distinct from upward departures, see Drew v. United States, 46 F.3d 823, 826 (8th Cir. 1995) ("This Court has recognized that the extent of an upward departure is 'quintessentially a judgment call' by the district court." (citation omitted)).

For the district court to apply the § 3B1.1(c) enhancement, the Government must prove that Davis organized, led, managed, or supervised another participant in the drug conspiracy. See Hammerschmidt, 881 F.3d at 637. And the district court must make a corresponding factual finding. Because it did not do so, we remand for further proceedings. Id. at 638; see also United States v. Musa, 830 F.3d 786, 788-89 (8th Cir. 2016) (remanding a case where the district court failed to make the required finding that the defendant organized or led another participant in the criminal scheme to justify the § 3B1.1 enhancement). The record may be reopened for the district court to hear any relevant evidence on this issue. See United States v. Eason, 907 F.3d 554, 557 (8th Cir. 2018).

For the foregoing reasons, we remand the case to provide the district court the opportunity to clarify whether Davis organized, led, managed, or supervised at least one other participant, and to identify what evidence supports that finding.

_____